UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA METRIS-SHAMOON, ET AL.,

Plaintiffs,

No. 18-13683

v.

District Judge Arthur J. Tarnow
Magistrate Judge R. Steven Whalen

CITY OF DETROIT, ET AL.,

Defendants.
_________________________________ /

**OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Order to Show Cause and/or for Default Judgment for Defendants' Failure to Comply with this Court's Prior Discovery Order [ECF No. 90], which has been referred for hearing and determination under 28 U.S.C. § 636(b)(1)(A). For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Plaintiffs' allege that Defendants have failed to comply with this Court discovery order entered on February 7, 2020 [ECF No. 83]. That was a briefly worded order granting the Plaintiffs' motion to compel discovery [ECF No. 61] "for the reasons and under the terms stated on the record on February 6, 2020." Unfortunately, Plaintiff's have

not provided a transcript of the hearing. Nevertheless, while Plaintiff's Second Request for Production of Documents, which was the subject of that motion, was somewhat broad, the Plaintiffs' motion and the discussion on the record centered on internal investigations into corruption in the Detroit Police Department's ("DPD's") Narcotics Unit. That Unit was disbanded in 2014. The requested discovery is targeted at Plaintiffs' *Monell*[1] claim against the City of Detroit, and in a general sense, the relevant inquiry is what the City knew on September 13, 2012, the date of the execution of the search warrant underlying Plaintiffs' claims.

One such investigation involved a 2010 incident in which about $800,000 was alleged to have been skimmed from a $3 Million drug money seizure. Pointing to trial testimony of one Gary Jackson, Plaintiffs state that "[t]he import of Jackson's testimony is that Defendant City of Detroit knew, as early as July or August, about the corruption of DPD's Narcotics Unit." ECF No. 61, PageID.983. Plaintiffs also referred to public statements by Detroit Police Chief Craig "confirm[ing] that the City undertook an investigation starting in the summer of 2010." *Id*. Plaintiffs' Requests to Produce Nos. 1-3 centered on material relating to the seizure of money. Request No. 1 asked Defendants to "[p]roduce all documents prepared by Chief Ralph Godbee related to his meeting with Gary Jackson and Derrick Coleman in July or August, 2010 in Troy, Michigan whereat the July 26, 2010 seizure of $3 million in cash by members of Sargent

[1] *Monell v. Dept. of Soc. Services of City of New York* 436 U.S. 658 (1978).

David Hansberry's crew (intended for a Mexican cartel in payment for 100 kilos of cocaine) was discussed; and, during this meeting Gary Jackson described in detail the conspiracy involving some members of Sargent Hansberry's Narcotics Enforcement Unit stealing approximately eight hundred thousand dollars of the seized drug money." ECF 90-2, PageID.1700. Request No. 2 included an omnibus demand for "documents which are related in any way to the alleged or actual criminal activity of members of the Detroit Police Department's Narcotic Enforcement Unit." ECF No. 90-2, PageID.1701.

In the present motion, Plaintiffs identify two factors that they say show that Defendants have failed to produce documents as ordered. First, they refer to a Detroit News article in which current Detroit Police Chief James Craig made statements that DPD Internal Affairs ("IA") is examining files for the past 10 years in cases involving false affidavits. Craig is reported to have said the "the probe is focusing on the activities of officers who worked with ex-Detroit narcotics cops David Hansberry, Bryan Watson and Arthur Leavells." ECF No. 90, PageID.1683. Plaintiffs note that Defendant Geelhood was "part of the narcotics unit who worked with Hansberry,Watson, and Leavells." *Id*.

The second factor is a recent statement by Wayne County Prosecutor Kym Worthy that she was moving to vacate two drug convictions where members of the Narcotics Unit were involved. One case was that of Darrell Chancellor, in which Defendant Geelhood was involved. Chancellor was convicted in 2012.

Attached to Defendants' Response is the Declaration of Christopher Graveline,

Director of Professional Standards & Constitutional Policing for the DPD. ECF No.94-2, PageID.1885-1890. Mr. Graveline states that he manages the Major Violators Unit task force ("MVU"), which "is separate and distinct from DPD's Internal Affairs Unit." *Id*. PageID.1886. The MVU Task Force is led by the DPD, but has investigators from the FBI and the Michigan State Police who brief prosecutors from the U.S. Attorney's Office and the Wayne County Prosecutor's Office. *Graveline Declaration*, ¶ 2, ECF No. 94-2, PageID.1886. The DPD has collected over ten years of voluminous records, with the case files from the Narcotics Unit "filling over 40 file cabinets and 200 banker boxes."

Mr. Graveline states that to date, the MVU Task Force has focused its investigation to activity from the years 2019, 2018, and 2017. *Id*. ¶ 3. Witness interviews are attended by FBI agents who generate FBI 302 reports. *Id*. ¶ 4. Mr. Graveline states that in a meeting with Defendants' counsel concerning the discovery order at issue, they determined that no files had been opened to date concerning any of the officers at issue in this lawsuit or the other four related cases pending in this Court, and that the Task Force was not working on any investigations pertaining to any of the officers identified in the five pending cases. *Id*. ¶ 6. As such, he says, "we determined that there were no records to produce pursuant to the Court Order." *Id*.

Mr. Graveline states that no one on the MVU Task Force has done any investigation on the Chancellor case because it involved a search warrant from 2011. *Id*. ¶ 7. However, on March 5, 2020 (subsequent to this Court's discovery order), APA

Valerie Newman informed him that the Wayne County Prosecutor Conviction Integrity Unit had completed its investigation, and would recommend that Chancellor's conviction be reversed. Mr. Graveline then referred the case to IA, which opened its investigation on March 18, 2020. *Id*. ¶ 8. Mr. Graveline states that the Chancellor file consists of the following: (1) the narcotics case jacket; (2) two days of transcripts from the bench trial; (3) email correspondence with the Wayne County Prosecutor's Office; (4) notes from Investigator Timothy Ewald; (5) four audio recordings of witness interviews; (6) personnel files of the involved officers; (6) LEIN information for certain witnesses; and (7) a thumb drive from Ewald containing an audio recording of his initial interview of Chancellor, case supervision sheets, and an interview synopsis. *Id*. Regarding production of the Chancellor file, Mr. Graveline states, "While we are producing the underlying narcotics file and waiver trial transcripts with today's filing, the other documents would be law enforcement privileged since their release would harm the ongoing internal investigation." *Id*.

Mr. Graveline states that the complete IA file in the Hansberry investigation involving the 2010 seizure of money (IA Case 10-122) was produced to Plaintiffs on March 8, 2020.

At oral argument on this motion, the Court learned that Mr. Ewald has made conflicting statements as to whether there is an IA investigation of Defendant Geelhood. The Court therefore directed that Ewald's file be produced for *in camera* review. The

Court has now received and reviewed those documents.

## II. DISCUSSION

First, the question of what my February 7, 2020 order covered and what it did not cover. It clearly did not cover investigations into search warrants issued after the disbanding of the Narcotics Unit in 2014, because those would not reasonably be considered relevant to what the City knew on September 13, 2012, the date of the search at issue in this case. Investigations into search warrants issued during the existence of the Narcotics Unit would be relevant to the extent that they revealed what the City knew *prior to* September 13, 2012. Moreover, even with respect to those investigations, there is a hierarchy of relevance. That is, investigations or documentation concerning Defendant Geelhood and the other officers named in the four related cases would have greater value that investigations into other Narcotics Unit officers. The latter would be relevant to Plaintiff's theory that there was a "culture of corruption" within the Unit. However, while this limited universe of investigative files (e.g., IA files) is fair game, under the proportionality standards of Fed.R.Civ.P. 26(b), my order cannot be reasonably construed to require the Defendants to undertake the Herculean task of producing every case file opened by Narcotics Unit officers from 2010 to 2014.

In response to the February 7 order, Defendants did produce IA File No. 10-122 (the Hansberry matter), including audio files. In addition, Defendants' counsel met with Mr. Graveline on February 13, 2020, and were informed that the MVU Task Force (which

is distinct from IA) had not opened any investigations dating to 2014, when the Narcotics Unit was disbanded and further had no open investigations concerning any of the individual Defendants in this and the four related cases.

But then came the revelation that the Wayne County Prosecutor has recommended that Chancellor's conviction be set aside. This occurred after the February 13 meeting with Mr. Graveline. However, in their response to the present motion, Defendants acknowledged that "as of March 18, 2020, an internal affairs file was opened regarding Sgt. Stephen Geelhood following the overturning of the 2012 conviction of Daryll Chancellor based on an investigation performed by the Wayne County Prosecutor's Office–Conviction Integrity Division." ECF No. 94, PageID.1864.

Of the seven categories of material related to the Chancellor investigation, Defendants have produced only two: the underlying narcotics file and court transcripts. They assert that the remaining material is protected from disclosure by the law enforcement privilege. Defendants also state that most investigatory material in the Chancellor case is held by the Wayne County Prosecutor's Office. ECF No. 94, PageID.1866.

As to Plaintiffs' request for a default judgment as a discovery sanction, their contention that the Defendants have acted in bad faith by intentionally withholding relevant material is overstated. As I stated in *O'Dell v. Kelly Servs., Inc.*, __F.R.D.__, 2020 WL 1274986, at *3 (E.D. Mich. Mar. 17, 2020):

> "Dismissal is a severe sanction. Granting dispositive relief—either dismissal or default judgment—for failure to cooperate in discovery 'is a sanction of last resort,' and may not be imposed unless noncompliance was due to 'willfulness, bad faith, or fault.' *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir.1990) (citations omitted). *See also Grange Mut. Cas. Co. v. Mack*, 270 Fed. Appx. 372, 376 (6th Cir.2008) (explaining that default judgment [and by implication dismissal of a complaint] is the court's most severe discovery sanction)."

Nor do I find that lesser discovery sanctions are appropriate at this time. This lawsuit is based on events that occurred in 2013, involving a member of a Narcotics Unit that was established in 2010 and disbanded in 2014. Several entities, including the Wayne County Prosecutor's Office, the F.B.I., and (yes) the Detroit Police Department's Internal Affairs Division, are investigating corruption within the Police Department, an investigation that is broader than simply the activities of the now-disbanded Narcotics Unit. The Plaintiff have a legitimate interest in obtaining discovery of relevant information that is proportional to the needs of their case, and in lieu of imposing sanctions that will do nothing to advance that interest, I will instead clarify my previous order, and direct the Defendants to produce material that is now being withheld.

Plaintiffs have correctly argued that they need the discovery for the purpose of effectively deposing witnesses, including Chief Craig, former Chief Godbold, and Timothy Ewald. Internal Affairs investigations specifically of Defendant Geelhood and the other officers named in the five related complaints would be of paramount importance. IA investigations of other members of the Narcotics Unit would be of secondary importance. Aside from the possible IA investigation of Geelhood in the

Chancellor case, Defendants say they have no other information. To be clear, however, they are required to produce any such information they do have, or that they may become aware of as the MVU Task Force's investigations proceed. They cannot be compelled to produce information in the possession of the Wayne County Prosecutor's Office or the F.B.I.

Which brings us to the information relating to the Chancellor case. Mr. Graveline states that the Task Force has seven categories of documents, only two of which have been produced. Because I was given conflicting information from Mr. Ewald as to the status of any IA investigation into Geelhood, I undertook an *in camera* review of Ewald's emails and case notes. Because, as explained below, I find that the law enforcement privilege does not apply, I will order the production of material in Defendants' possession relating to the Chancellor case, including Mr. Ewald's file that was submitted for *in camera* review, and the Geelhood IA file, if it exists.

"The federal law enforcement privilege is 'a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement.' " *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011) (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010) ). "Three requirements must be met by the Government to prevail on its claim of privilege: '(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2)

assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.' " *Hamama v. Adducci*, 2018 WL 2445042, at *1 (E.D. Mich. May 31, 2018)(quoting *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)).

Assuming that factors (1) and (2) are met, the assertion of law enforcement privilege falters on factor (3), because the generalized claim does not explain precisely why the withheld information properly falls within the privilege. Moreover, it does not appear that Ewald's material or the Chancellor investigation would fall within the privilege in any event. " 'The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.' " *Hamama* at *1 (quoting *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008)). Mr. Ewald's file, which I have reviewed *in camera*, does not reveal any law enforcement techniques or procedures. Defendants have already stated in their response to this motion that there is an IA investigation of Defendant Geelhood, so there is no concern about "tipping off" a criminal suspect, and there would be no threat to the safety of any person if Ewald's file were released to the Plaintiffs. Ewald's material does not refer to any confidential sources, and given that Chancellor's conviction has been

reversed, there is no law enforcement concern with protecting sources.

In addition, even where information meets the three-part test for invoking the law enforcement privilege, it is a qualified privilege, and as such, "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *In re Sealed Case*, 856 F.2d at 272. In *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C.1998), the Court cited ten non-exclusive factors to consider in balancing a party's need for the information against the government's need for secrecy:[2]

> "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case."

The majority of these factors weigh in favor of disclosure. The Chancellor will not chill citizens from giving information. To the contrary, the communications between Ewald and Valerie Newman show that the information led to the reversal of the conviction of an individual who was the victim of police misconduct. If anything, this

---

[2] Cases from this district apply the *Tuite* factors. *See Hamama* at *3; *In re Packaged Ice Antitrust Litigation*, 2011 WL 1790189 (E.D. Mich. May 10, 2011).

result would *encourage* citizens with similar information to come forward. There would be no deleterious impact on disclosing the identity of the two witnesses that Ewald interviewed. There likewise no chilling effect on government self-evaluation and improvement, as shown by the work of the MVU Task Force, which is undertaking a comprehensive review of misconduct within the Detroit Police Department. Ewald's information is largely (although not entirely) factual. The Plaintiffs in this case will not be potential criminal defendants based on the Chancellor file, which centers on the 2012 Chancellor case, not these Plaintiffs. The Wayne County Prosecutor's investigation that culminated in the reversal of Chancellor's conviction has been completed, although the IA investigation of Geelhood (if indeed there is an IA investigation) has not been completed. By the same token, if there is an IA investigation of Geelhood (*Tuite* factor no. 7), that could weigh against disclosure. Finally the last three *Tuite* factors clearly weigh in favor of disclosure: the Plaintiffs' suit is not frivolous, the information is not at this point reasonably available from other sources, and the information is very important to the Plaintiffs' case, including their ability to effectively depose Ewald. *See United States v. Leggett & Platt, Inc*., 542 F.2d 655, 659 (6th Cir. 1976)("In assessing [Defendant's] need, the district court should consider, inter alia, the importance of the documents to [Defendant's] defense")(citing *SEC v. Nat'l Student Marketing Corp*., 68 F.R.D. 157, 160-163 (D.D.C.1975)).

Accordingly, the Defendants will produce to Plaintiffs all information in their

possession relating to the Chancellor case, including Mr. Ewald's file that was submitted for *in camera* review[3], and the IA file on Defendant Geelhood, if it exists.[4]

**III. CONCLUSION**

Plaintiffs' Motion for Order to Show Cause and/or for Default Judgment for Defendants' Failure to Comply with this Court's Prior Discovery Order [ECF No. 90] is GRANTED IN PART AND DENIED IN PART.

Plaintiffs' request for an order to show cause and a default judgment is DENIED.

Plaintiff's request for other discovery sanctions is DENIED.

The motion is GRANTED to the extent that Defendants will produce all information in their possession relating to the Chancellor case, as set forth above.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: June 9, 2020

---

[3] This includes attachments to the emails that Mr. Ewald received, thumb drives, and any other material in Mr. Ewald's possession relating to the Chancellor case or Defendant Geelhood, as well as any related material within the possession of the MVU Task Force.

[4] The status of any IA investigation of Geelhood may not be resolved until Mr. Ewald is deposed.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 9, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager